NOTICE: Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale. Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case. A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent. See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

23-P-32

NATALY MINKINA

vs.

MEDICAL PROFESSIONAL MUTUAL INSURANCE COMPANY.

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

The plaintiff, Nataly Minkina, filed a complaint against the defendant, Medical Professional Mutual Insurance Company (ProMutual),[1] in Superior Court seeking damages and declaratory relief pursuant to G. L. c. 93A and G. L. c. 176D. After a jury-waived trial, the judge concluded that ProMutual did not engage in unfair or deceptive acts or trade practices under G. L. c. 93A and G. L. c. 176D. Minkina appeals from the judge's determination that ProMutual complied with statutory requirements for reporting medical malpractice claim settlements.

_____

[1] The defendant is now known as Medical Professional Mutual Insurance Company. Because it is referred to as ProMutual in the trial record, we refer to it as ProMutual here.

Background.  In 2007, a former patient and her husband filed a medical malpractice lawsuit against Minkina, alleging that she and her codefendants failed to diagnose the patient's breast cancer.  ProMutual, Minkina's insurer at the time, retained an experienced medical malpractice attorney to represent Minkina and her codefendants.  The attorney estimated that, if the plaintiffs were to prevail at trial, the verdict would be in the range of $1.5 to $2 million.  After conferring with medical experts, ProMutual's claim consultant decided to settle the suit for $500,000.  Although the plaintiffs demanded $2.5 million, they agreed to settle the suit for $500,000.  All four of the experts consulted by ProMutual opined that Minkina breached the standard of care.  Based on an evaluation of her liability, ProMutual allocated $150,000 (thirty percent) of the settlement to Minkina's policy.  ProMutual obtained no financial benefit from allocating this portion of the settlement to Minkina's policy rather than to one of the other codefendants' ProMutual policies.

As required by G. L. c. 112, § 5C, ProMutual reported the settlement of the suit to the Board of Registration in Medicine (board).  Before ProMutual reported the settlement, the board gave permission to ProMutual to put the board's settlement reporting form on its computer system and reformat the form as

2

necessary to extract the information from the form. While the form's layout changed slightly, its content remained the same. Counsel for the board testified that ProMutual's form was "a standard form that is used."

Discussion. "Where a judge makes findings of fact in a bench trial, we review them for clear error." H1 Lincoln, Inc. v. South Washington St., LLC, 489 Mass. 1, 13 (2022). "[T]he credibility of the witnesses rests within the purview of the trial judge" (citation omitted). Robert & Ardis James Found. v. Meyers, 474 Mass. 181, 186 (2016). "The trial judge's legal conclusions, by contrast, we review de novo." H1 Lincoln, Inc., supra.

General Laws c. 112, § 5C, requires insurance companies to report settlements of medical malpractice claims and mandates that "[s]uch reports shall be in writing on a form prescribed by the board." The statute requires settlement reports to include several pieces of information, including the "policy number of the physician against whom the claim is made." G. L. c. 112, § 5C. Under G. L. c. 112, § 5G (b), "[n]o person who reports information to the board as required in [G. L. c. 112, § 5C,] . . . shall be liable in any cause of action arising out of such report provided that such person acts in good faith and with a reasonable belief that such report was required."

3

"In interpreting a statute, we begin with its plain language, as the best indication of legislative intent." 135 Wells Ave., LLC v. Housing Appeals Comm., 478 Mass. 346, 354 (2017). "[O]ur respect for the Legislature's considered judgment dictates that we interpret the statute to be sensible, rejecting unreasonable interpretations unless the clear meaning of the language requires such an interpretation" (citation omitted). Osborne-Trussell v. Children's Hosp. Corp., 488 Mass. 248, 254 (2021). We "refrain from reading into the statute a provision which the Legislature did not see fit to put there or words that the Legislature had an option to, but chose not to include" (quotation and citation omitted). Essex Regional Retirement Bd. v. Swallow, 481 Mass. 241, 252 (2019).

"[T]he judge has discretion to permit background testimony from a representative of a regulatory agency about how the agency interprets and carries out its mandates." Commonwealth v. Springfield Terminal Ry. Co., 80 Mass. App. Ct. 22, 43 (2011). "We give substantial deference to a reasonable interpretation of a statute by the administrative agency charged with its administration enforcement, but the duty of statutory interpretation rests in the courts" (citation omitted). Commerce Ins. Co. v. Commissioner of Ins., 447 Mass. 478, 481 (2006).

4

Minkina asks us to read into G. L. c. 112, § 5C, a requirement that insurers must report settlements using an immutable document that represents the singular "form prescribed by the board." G. L. c. 112, § 5C. She contends that the board may not authorize an adaptation of the form to an insurer's computer system,[2] even if that form retains the same substance and only slightly alters the layout of the board's original document. Minkina also asserts that ProMutual did not comply with the statute because its form did not contain Minkina's policy number, as required by G. L. c. 112, § 5C.[3]

The board approved the electronic form, and counsel for the board testified that it was a "standard form." Finding no support in the statute for Minkina's argument, and deferring to the board's reasonable interpretation of its statutory mandate, we conclude that ProMutual's use of the electronic form complied

---

[2] Minkina does not dispute that the board authorized the use of the electronic form. As the judge's finding is also supported by the evidence, we decline to disturb it. See H1 Lincoln, Inc. 489 Mass. at 13.

[3] Minkina also points to other minor differences between the board's document and ProMutual's electronic reporting document. Minkina cites no authority, statutory or otherwise, that would imbue these differences with any significance. Accordingly, these contentions do not rise to the level of appellate argument. See Mass. R. A. P. 16 (a) (9) (A), as appearing in 481 Mass. 1628 (2019).

with the requirements of G. L. c. 112, § 5C.[4]  See Commerce Ins. Co., 447 Mass. at 481.

Judgment affirmed.

By the Court (Meade, Blake & Brennan, JJ.[5]),

Clerk

Entered:  September 10, 2024.

---

[4] Any deviation from the statute's requirements was de minimis.  Minkina does not argue that she suffered any injury from ProMutual's use of the electronic form, and she does not point to any meaningful difference between the two forms.

[5] The panelists are listed in order of seniority.